| | |
|---|---|
| 1 | ERIC S. FISHER (SBN 240545) |
| 2 | AMY C. POYER (SBN 277315)<br>**BARNES & THORNBURG LLP** |
| 3 | 2029 Century Park East, Suite 300<br>Los Angeles, California 90067 |
| 4 | Telephone: 310.284.3880<br>Facsimile: 310.284.3894 |
| 5 | Email: efisher@btlaw.com<br>Email: apoyer@btlaw.com |

Attorneys for Plaintiff,
Ion Media Networks, Inc.,
d/b/a Bounce Media, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ION MEDIA NETWORKS, INC., D/B/A BOUNCE MEDIA, LLC, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>COPPER BEECHES, INC. a California corporation,<br><br>Defendant. | Case No. 2:24-cv-00819<br><br>**COMPLAINT FOR:**<br><br>(1) **Breach of Contract**<br><br>(2) **Breach of the Implied Covenant of Good Faith and Fair Dealing**<br><br>(3) **Conversion**<br><br>(4) **Unjust Enrichment**<br><br>(5) **Attorney's Fees and Expenses**<br><br>**[JURY TRIAL DEMANDED]** |

## COMPLAINT

Plaintiff Ion Media Networks, Inc., d/b/a Bounce Media, LLC ("Bounce") hereby submits its Complaint against Defendant Copper Beeches, Inc. ("Copper Beeches" or "Producer"), and alleges as follows:

## THE PARTIES

1. Bounce is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 312 Walnut St, Suite 2800, Cincinnati, Ohio.

2. Copper Beeches is a corporation organized and existing under the laws of the State of California with its principal place of business at 15300 Ventura Blvd, Suite 502, Sherman Oaks, California 91403.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

5. Bounce owns and operates broadcast television networks. Prior to a merger in January 2021, Ion Media, LLC and Bounce Media, LLC operated independently, but now both are part of the company known as Ion Media Networks, Inc. d/b/a Bounce Media, LLC.

6. Copper Beeches is a film distribution company run by film producer Ned Nalle.

7. On or about August 1, 2018, Bounce entered into a contract with Copper Beeches titled "Production and License Agreement" (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit "A." The Agreement includes the following material terms, in pertinent part:

A. "**Pictures**. The programs to be produced and licensed hereunder shall consist of three (3) long-form films (each, a "Picture," and, collectively, the "'Pictures")" (Agreement, § 1);

B. "**Amount**. Provided that Producer is not in uncured material breach of this Agreement, Bounce shall pay to Producer production and license fees (the "**Fees**") in the amount of eight hundred thousand dollars ($800,000) for each Picture, for a total, combined payment of two million, four hundred thousand dollars ($2,400,000) for all Pictures" (*id.*, § 2(a));

C. "**Bounce Approvals**. Bounce will have final approval over all key creative issues relating to the production activities for the Pictures, including, without limitation, certain talent (as set forth below) and certain crew (specifically, writer(s), additional producers, director, casting director, a reasonable number of cast leads (but not local hire, lesser roles), director of photography, production designer, music supervisor and composer), and final approval on scripts and other creative elements, including all intermediate and final cuts. Bounce agrees not to unreasonably withhold or delay the exercise of Bounce's approval rights or exercise such approval rights in a manner that may frustrate the intent of this Agreement" (*id.*, § 3(b));

D. "**Production Budgets**. Each Picture shall have a production budget of at least eight hundred thousand dollars ($800,000), which shall include a production fee of sixty thousand dollars ($60,000) per Picture, for a total, combined production fee of one hundred eighty thousand dollars ($180,000) for all three Pictures. Bounce shall have final approval of the production budget for each Picture, which approval shall not be unreasonably denied or delayed. Not later than 60 days after Final Delivery of each Picture, Producer shall provide to Bounce a full

accounting of expenditures actually made in the production of such Picture" (*id*., § 3(d));

E. **"Production Costs**. Producer shall be solely responsible for the payment of all costs and expenses of production of the Pictures (other than public performance royalties the payment of which shall be the responsibility of. as applicable, Bounce or other exhibitors of the Pictures) including, without limitation, insurance costs, travel, third-party clearances, facilities, cameras, sound editing, fringe benefits, writers, actors, directors and all other above-the-line talent, all below-the-line talent, and all other elements related to the production, editing, and delivery of the Pictures as contemplated hereunder. It is a material element of this Agreement that Producer make all such payments in timely manner, including, without limitation, any residual payments, subject to Section 8(e)(ii) below" (*id*., § 3(e));

F. "**Overages**. Without limiting the foregoing Subsection 3(e). Producer shall be solely responsible for payment of all costs or expenses related to the production of the Pictures, including any production cost overruns ("**Overages**")" (*id*., § 3(f));

G. "**Take Over**. Bounce will have the irrevocable right, but not the obligation, to take over any aspect of the development and production of any Picture or to assume complete and sole control over all matters regarding the production and delivery of any Picture (including, without limitation, all creative elements, and/or replacement of personnel), and/or to require Producer to dispense with services of any person rendering services with respect to any Picture if any of the following occur …: (i) during the Term, Producer commits an uncured material default in the timely or faithful performance of its obligations hereunder; (i) at any time, delivery of any portion of the Pictures, or the Series as a whole, is

|   |   |
|---|---|
| 1 | five (5) or more days behind of the Production Schedule; (ii) Producer |
| 2 | fails to deliver the Pictures in accordance with the terms of this |
| 3 | Agreement (subject to written notice and an opportunity to cure in a |
| 4 | timely manner); (iii) Producer violates the material terms of any |
| 5 | agreements entered in connection with the Pictures and fails to collect |
| 6 | any such violation within five (5) business days of receiving notice |
| 7 | thereof; or (iv) any member or Producer's principal management (i.e., |
| 8 | Ned Nalle) for such Picture is indicted, formally charged with or |
| 9 | convicted of a felony, or misdemeanor involving moral turpitude, |
| 10 | engages in any verified act constituting sexual assault, sexual harassment, |
| 11 | or sexual abuse, or makes any written or oral public statement disparaging |
| 12 | any group or individual on the basis of race, religion, ethnicity or sexual |
| 13 | orientation, which statement could reasonably be perceived to bring the |
| 14 | individual making such statement into public disrepute or to reflect |
| 15 | unfavorably on Producer, the Picture, or Bounce" (*id*., § 4(j)); |

H. "**Termination**. Without limitation to Section 4 (j) above, if at any time prior to the premiere exhibition of a Picture by Bounce, Producer shall fail or refuse to perform any of its material obligations under this Agreement (a "Producer Default"), Bounce shall have the right to terminate this Agreement by written notice to Producer at any time if: (i) Producer fails to cure such Producer Default within five (5) business days after receipt of written notice setting forth in reasonable detail the nature of the Producer Default, or (ii) an event occurs which would authorize Bounce to take over production of a Picture pursuant to Section 4 (j)(iv) above, provided that, in such event, Bounce may elect in its discretion to exercise either, both, or neither of its rights pursuant to Section 4(j)(iv) or this Section 7(b)(ii)" (*id*., § 7(b)); and

I. "**Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia applicable to contracts entered into and fully performed therein and without regard to any conflict of law rules thereof" (*id*., § 16(k)).

8. In or about late 2018, Copper Beeches produced for Bounce, pursuant to the Agreement, the first Picture (a film titled "A Stone Cold Christmas").

9. By December 1, 2018, Bounce had paid Copper Beeches $1,640,000 for the first and second Pictures.

10. Copper Beeches failed to produce the second Picture.

11. In mid-2020, Bounce indicated to Copper Beeches that it intended to initiate the process of termination of the Agreement due to Producer Default. Copper Beeches asked for another chance to fulfill its obligations. As consideration for Bounce refraining from moving forward with the termination process (including collecting the $840,000 paid for the second Picture), Copper Beeches agreed to enter into the Amendment to Production and License Agreement dated September 30, 2020 (the "Amendment"). (A true and correct copy of the Amendment is attached hereto as Exhibit "B.")

12. In the Amendment, the parties (i) agreed to reduce the number of Pictures from three to two, (ii) acknowledged that all payments for the two Pictures "were timely made and received," and (iii) identified that the first $800,000 paid by Bounce was for the first Picture and the remaining $840,000 would be used for the second Picture. (Amendment, §§1-2, Amended Schedule A-1.)

13. Even after acknowledging payment in full and being given a second chance by Bounce to move forward with the second Picture, Copper Beeches never made a good faith effort to produce and license the second Picture. Instead, Copper Beeches half-heartedly pitched films that Bounce had previously rejected in good faith, knowing full well that such films would never be approved by Bounce when they were pitched for the second time. Copper Beeches further refused to produce films from scripts that Bounce provided to it for the second Picture.

14. Upon information and belief, Ned Nalle admitted that (i) Copper Beeches had spent the money Bounce paid for the second Picture, and (ii) it could not afford to start production of the second Picture.

15. On November 20, 2023, counsel for Bounce sent to Copper Beeches a formal Notice of Producer Default and Demand to Cure, a true and correct copy of which is attached hereto as Exhibit "C."

16. Copper Beeches failed to cure its Producer Default, and Bounce terminated the Agreement and Amendment by letter dated January 29, 2024, a true and correct copy of which is attached hereto as Exhibit "D."

## FIRST CAUSE OF ACTION

### (Breach of Contract)

17. Bounce reasserts and incorporates herein by reference the allegations set forth above, as well as the terms of the Agreement and Amendment.

18. Bounce and Copper Beeches entered into a valid and binding contract, the Agreement, which was duly amended through the Amendment.

19. Bounce has performed all of the terms and conditions required of it under the Agreement and Amendment.

20. As detailed above, Copper Beeches materially breached the Agreement and Amendment by, among other things, failing to produce the second Picture and refusing to return the $840,000 that it accepted to produce the second Picture (the "Outstanding Principal Balance").

21. Bounce has demanded repayment of the Outstanding Principal Balance but it remains due and payable from Copper Beeches to Bounce.

22. As a result of its material breaches of the Agreement and Amendment, Copper Beeches has damaged Bounce in an amount to be proven at trial, but in an amount not less than the Outstanding Principal Balance.

## SECOND CAUSE OF ACTION

### (Breach of The Implied Covenant of Good Faith and Fair Dealing)

23. Bounce reasserts and incorporates herein by reference the allegations set forth above, as well as the terms of the Agreement and Amendment.

24. Implicit in the Agreement and Amendment between Bounce and Copper Beeches was a covenant that Copper Beeches would act in good faith at all times to ensure that Bounce received the benefits of the Agreement and Amendment.

25. For the reasons detailed above, Copper Beeches breached this implied covenant of good faith and fair dealing by depriving Bounce of the benefits of the Agreement and Amendment to which Bounce was entitled.

26. Bounce has been damages as a result of Copper Beeches' breaches in an amount to be proven at trial, but in an amount not less than the Outstanding Principal Balance.

## THIRD CAUSE OF ACTION

### (Conversion)

27. Bounce reasserts and incorporates herein by reference the allegations set forth above.

28. By accepting the Outstanding Principal Balance and failing to use it for the legitimate purposes specified in the Agreement and Amendment, as well as then failing to repay such funds to Bounce, Copper Beeches has willfully and unlawfully taken and converted specific, identifiable sums of currency (the "Converted Funds") belonging to Bounce without authorization and in a manner inconsistent with Bounce's right to the Converted Funds.

29. As a direct and proximate result of Copper Beeches' conversion of the Converted Funds, Bounce has been injured and suffered damages in an amount to be determined at trial, but in an amount not less than the Outstanding Principal Balance.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment)

30. Bounce reasserts and incorporates herein by reference the allegations set forth above.

31. By its wrongful acts and omissions set forth above, Copper Beeches was unjustly enriched at the expense of, and to the detriment of, Bounce.

32. Copper Beeches has unjustly retained the benefits received from Bounce.

33. Bounce seeks restitution from Copper Beeches, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Copper Beeches accruing to it from the above-detailed wrongful conduct.

## FIFTH CAUSE OF ACTION

### (Attorneys' Fees and Expenses)

34. Bounce reasserts and incorporates herein by reference the allegations set forth above.

35. The Agreement and Amendment are governed by Georgia law (Agreement, § 16(k)), and whether a party is entitled to costs and attorney's under a contract is one of substantive law governed by the state choice-of-law provision in the contract.

36. Georgia Code Section 13-6-11 applies to both contract and tort claims under Georgia law.

37. Copper Beeches has acted in bad faith, caused Bounce unnecessary trouble and expense, and has been stubbornly litigious.

38. By reason of the foregoing, Bounce is entitled to recover its reasonable attorney's fees and expenses of litigation from Copper Beeches pursuant Georgia Code Section 13-6-11.

## PRAYER FOR RELIEF

**WHEREFORE,** Bounce prays for judgment as follows:

1. An award of compensatory damages in an exact amount to be proven at trial, but in an amount not less than $840,000;
2. Pre-judgment interest at the applicable legal rate;
3. Post-judgment interest at the applicable legal rate;
4. Attorney's fees, costs, and expenses incurred in connection with this action pursuant to Georgia Code Section 13-6-11; and

5. Such other and further relief as the Court deems just and proper.

Dated: January 30, 2024            **BARNES & THORNBURG LLP**

By: /s/ Eric S. Fisher
Eric S. Fisher
Amy C. Poyer
Attorneys for Plaintiff
Ion Media Networks, Inc., d/b/a
Bounce Media, LLC

## DEMAND FOR JURY TRIAL

Bounce hereby demands a jury trial on all issues herein.

Dated: January 30, 2024　　　　　　　**BARNES & THORNBURG LLP**


　　　　　　　　　　　　　　　　　　By: /s/ Eric S. Fisher
　　　　　　　　　　　　　　　　　　　　Eric S. Fisher
　　　　　　　　　　　　　　　　　　　　Amy C. Poyer
　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　　Ion Media Networks, Inc., d/b/a
　　　　　　　　　　　　　　　　　　　　Bounce Media, LLC